IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY                                                        PLAINTIFF

v.                                                         CIVIL ACTION NO.: 1:12-CV-75-SA-DAS

ELIZABETH MOSLEY, et al.                                                  DEFENDANTS

MEMORANDUM OPINION

Presently before the Court are the parties' cross-motions for summary judgment. Specifically, Defendant Albert Graham has filed a Motion for Summary Judgment [38] asserting that the exclusion in the applicable insurance policy violates due process and the equal protection clause, that the exclusion is ambiguous, and finally that the Plaintiff's declaratory judgment action is premature, denying Defendant Graham of the right to due process. Defendant LogistiCare has likewise filed a Motion for Summary Judgment [66] arguing that State Farm owes a duty to LogistiCare to defend and/or indemnify LogistiCare in an underlying tort action. Finally, State Farm has filed a Motion for Summary Judgment [69] seeking a declaration that the applicable insurance policy provides Defendant Mosley no coverage for the subject underlying accident. For the reasons set forth below, the Court denies Defendant Logisticare's Motion for Summary Judgment [66]; the Court denies Defendant Albert Graham's Motion for Summary Judgment [38]; the Court grants Plaintiff State Farm's Motion for Summary Judgment [69].

FACTUAL BACKGROUND

The material and undisputed facts are as follows. Defendant LogistiCare Solutions, which operates in approximately forty-three states, contracts with numerous state agencies to

provide nonemergency medical transportation services for Medicaid patients. In Mississippi, Medicaid pays LogistiCare to arrange transport for these patients and Logisticare, in turn, then coordinates with both commercial transportation providers and so-called volunteer drivers to actually provide that transportation. The commercial providers are separate transportation companies that hire their own drivers, maintain their own fleet of vehicles, and provide their own insurance. Logisticare negotiates and then enters into a formal contract with those commercial providers and that contract then governs the relationship between the parties.

On the other hand, the volunteer drivers enter into no such agreement. LogistiCare does not consider these drivers to be employees as they do not earn an hourly wage and are not paid any sort of salary. Instead, those drivers are compensated purely in the form of mileage reimbursements. Additionally, they are not required to accept trip assignments and have no set working hours. Those individual drivers are required to provide their own vehicle and remain responsible for the maintenance and upkeep of that vehicle. Although LogistiCare requires the drivers to obtain insurance for the vehicle they use to transport clients, the burden is on the individual driver to maintain that coverage.

Defendant Elizabeth Mosley was an individual driver for Defendant Logisticare from 2008 to 2011. According to Mosley's own testimony, she deemed herself a volunteer not because she provided transportation as a means of charity, but because LogistiCare compensated strictly for mileage and not with "actual pay." According to Mosley, she would not have continued to operate as an individual driver had she been consistently losing money by doing so.[1]

---

[1] The volunteer driver agreement signed by Mosley provides, "I understand that I am strictly a volunteer and not an employee of LogistiCare or LogistiCare, Inc., and agree I do not have any benefits available to the employees of LogistiCare, Inc., including but not limited to wages, health insurance, accident insurance, worker's compensation and retirement benefits. I agree any time I use my vehicle [to] perform volunteer transportation I am responsible for

While engaged as a driver for LogistiCare, Mosley operated a wheelchair accessible 1995 Ford F150 E passenger van. She purchased the van to either "work for LogistiCare or try to make more money." In her dealings with LogistiCare, she was reimbursed 44 cents per mile for ambulatory patients and 48 cents per mile for wheelchair bound patients. Additionally, Mosley was allowed to stack those reimbursements. For instance, if she were carrying two ambulatory clients, she would be reimbursed 88 cents per mile and so on. Mosley stated that she preferred to carry more than one patient at a time. According to Mosley, the reason for this was rather simple. In that situation, "[o]ne of them is going to pay for the gas and one of them would be the benefit for me."

While acting as a volunteer driver for LogistiCare, Mosley was not allowed to run personal errands while accompanied by a client. Although she could take personal trips once reaching a destination city, Mosley viewed her purpose for the trip as solely to transport the client to an appointment. LogistiCare forbade drivers from accepting personal contributions from riders and would have stepped in to intervene had they learned a driver was accepting tips or other types of contributions for the trips. The mileage paid to drivers was based not on actual miles driven, but based on a predetermined software calculation of how many miles the trip would theoretically take to complete. Whether the driver actually took that route to transport the patient was not considered in the mileage reimbursement.

Further, Mosley had no previous relationship with the persons she transported. Approximately two to three days prior to a pick-up, LogistiCare sent directions to potential drivers, informing them of who needed to be picked up. That notice would include the name of

_____

making certain the vehicle is properly insured…I expect to be reimbursed solely for my mileage expense associated with using my own vehicle. I understand that I will be reimbursed by LogistiCare, Inc., only for the number of miles driven."

the client, the health care provider's name and phone number, the time of the appointment, and the address of both the departure and destination. Mosley, however, was completely free to decline any jobs that came through. In that event, she would fill out a reroute sheet and fax it back to LogistiCare. LogistiCare would then send the assignment to another driver.

On March 19, 2010, Mosley accepted a LogistiCare assignment to transport Pearlie Graham to a medical appointment in Jackson, Mississippi. Mosley had no prior relationship with Graham and accepted the job solely because Graham was a LogistiCare client. Graham made no personal contribution to Mosley for the service. Graham, however, was wheelchair bound and Mosley was to be reimbursed 48 cents per mile for transporting Graham. During the course of that transportation route, Mosley's vehicle was involved in a motor vehicle accident, which allegedly led to Graham's death. Graham's estate thereafter filed suit in state court against both Mosley and LogistiCare. In that underlying complaint, Graham's estate averred that Mosley was negligent in both securing Graham in the vehicle and in operating the vehicle. Additionally, the estate averred that LogistiCare was vicariously liable for Mosley's negligence.

Mosley and LogistiCare thereafter tendered a claim to State Farm and demanded defense and indemnification pursuant to Mosley's automobile liability policy. State Farm denied the claim, relying on an exclusion to the policy that provides, "[t]here is no coverage for an insured…for damages arising out of the ownership, maintenance, or use of a vehicle while it is being used to carry persons for a charge." State Farm subsequently commenced the present declaratory judgment action, requesting that the Court declare that no coverage exists under the subject automobile policy and that no defense or indemnity is owed to Mosley or LogistiCare.

LogistiCare, Albert Graham, and State Farm have now filed cross- motions for summary judgment. The Court now evaluates the merits of the parties' arguments.

<u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals both that there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Id.</u> at 323, 106 S. Ct 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. <u>TIG</u>

5

Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

DISCUSSION

Mississippi substantive law applies in this diversity case. See Barden Miss. Gaming Ltd. Liab. Corp. v. Great N. Ins. Co., 638 F.3d 476, 478 (5th Cir. 2011). In Mississippi, "the interpretation of an insurance policy is a question of law, not one of fact." Corban v. United Services Auto. Ass'n., 20 So. 3d 601, 609 (Miss. 2009)  (quoting Noxubee Co. Sch. Dist. v. United Nat'l Ins. Co., 883 So. 2d 1159, 1165 (Miss. 2004)).  Insurance policies are contracts, and as such, must be enforced according to their written provisions.  Id. (citing Noxubee Co., 883 So. 2d at 1166.  When parties to a contract make mutual promises, they are entitled to the benefit of that bargain and insurance companies must therefore be able to "rely on their statements of coverage, exclusions, disclaimers, definitions, and other provisions."  Id.  As such, the court relies upon familiar rules of construction to discern their meaning.  Progressive Gulf Ins. Co. v. We Care Day Care Center, Inc., 953 So. 2d 250, 253 (Miss. Ct. App. 2006).

The policy is to be considered as a whole, giving weight to all relevant portions and, whenever possible, giving "operable effect to every provision in order to reach a reasonable overall result."  Id.  (citing J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co., 723 So. 2d 550, 552 (Miss. 1998).  While ambiguities in an insurance contract are to be construed against the insurer, a clear and unambiguous contract will be enforced as written.  Id.  In reviewing a policy, terms should be understood in their "plain, ordinary, and popular sense rather than in a philosophical or scientific sense."  Blackledge v. Omega Ins. Co., 740 So. 2d 295, 298 (Miss. 1999).

Ambiguities exist in a policy when the policy can be logically interpreted in two or more ways, and at least one of those interpretations provides for coverage. Id. (citing United States Fid. & Guar. Co. v. Martin, 998 So. 2d 956, 963 (Miss. 2008)). An ambiguity does not exist simply because the parties disagree over the interpretation of the applicable language. Id. When the insurer relies upon a policy exclusion, however, the exclusion must be clear and unmistakable as those clauses are strictly interpreted. Id. If the insurer shows an exclusion applies, the burden shifts back to the insured to show that there is an exception to the exclusion. Legacy Condominiums, Inc. v. Landmark American Ins. Co., 2008 WL 80373, * 4 (S.D. Miss. Jan. 4, 2008) (citing Guaranty Nat. Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 194 (5th Cir. 1998)); see also U.S. Fidelity and Guar. Co. v. B & B Oil Well Serv., Inc., 910 F. Supp. 1172, 1182 (S.D. Miss. 1995).

An insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations of wrongdoing asserted in the underlying action. See Delta Pride Catfish, Inc. v. Home Ins. Co., 697 So. 2d 400, 403 (Miss. 1997). Not surprisingly, "[T]he duty to defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy." Titan Indem. Co. v. Pope, 876 So. 2d 1096, 1101 (Miss. Ct. App. 2004) (quoting Merchants Co. v. Am. Motorists Ins. Co., 794 F. Supp. 611, 617 (S.D. Miss. 1992)).

*Jurisdiction*

The present action has been filed as a declaratory judgment action under 28 U.S.C. § 2201(a). The Declaratory Judgment act "is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant." Sherwin-Williams Co. v. Holmes Co., 343

7

F.3d 383, 389 (5th Cir. 2003) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 287, 115 S. Ct.

2137, 132 L. Ed. 2d 214 (1995)).  However, a federal court may not enter a declaratory judgment

absent an "actual controversy."  American States Ins. Co. v. Bailey, 133 F.3d 363, 368 (5th Cir.

1998).  "An actual controversy may exist when an insurance carrier seeks a declaratory judgment

that it has a duty neither to defend nor indemnify its insured in a state court action that has not

yet proceeded to judgment."  Id.  (citing Western Heritage Ins. Co. v. River Entertainment, 998

F.2d 311, 315 (5th Cir. 1993)).  The current action has been commenced by Plaintiff State Farm

to determine whether it is required to defend or indemnify Defendant Mosley.  As such there is

an actual controversy, and the question is therefore justiciable.

*Duty to Defend*

In the case at hand, the parties' dispute turns squarely on whether the carrying "persons

for a charge" exclusion contained within the policy precludes coverage.  Absent the exclusion,

State Farm does not contest that coverage is proper.  The applicable exception states as follows:

THERE IS NO COVERAGE FOR AN INSURED:

6.    FOR DAMAGES ARISING OUT OF THE OWNERSHIP,
      MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS
      BEING USED TO CARRY PERSONS FOR A CHARGE.  This
      exclusion does not apply to the use of a private passenger car on a
      share-the-expense basis.

Under Mississippi law, it is entirely conceivable that the duty to defend may be broader

than the duty to indemnify.  Titan, 876 So.2d at 1101.   The general rule is that an insurer's duty

to defend hinges on the allegations in the underlying complaint.  American States Ins. Co. v.

Natchez Steam Laundry, 131 F.3d 551, 552 (5th Cir. 1998)  (citing State Farm Mut. Auto. Ins.

Co. v. Taylor, 233 So. 2d 805, 808 (Miss. 1970)).  That duty is measured by the "allegations in

8

the plaintiff's pleadings regardless of the ultimate outcome of the action." Id. (citing EEOC v. Southern Pub. Co., 894 F.2d 785, 789 (5th Cir. 1990)).

As such, "if the factual allegations of the complaint bring the action within the coverage of the policy, 'irrespective of what the actual facts may later prove to be,' the insurer is contractually bound to defend its insured.'" Meng v. Bituminous Cas. Corp., 626 F. Supp. 1237, 1240 (S.D. Miss. 1986) (relying on the "allegations of the complaint" rule under Mississippi law) (citing Preferred Risk Mut. Ins. Co. v. Poole, 411 F. Supp. 429, 435 (N.D. Miss. 1976)). In sum, a duty to defend arises if the "complaint alleges facts which are arguably within the policy's coverage." Acceptance Ins. Co. v. Powe Timber Co., Inc., 403 F. Supp. 2d 552, 554 (S.D. Miss. 2005); Mitchell v. State Farm Fire & Cas. Co., 799 F. Supp. 2d 680, 687 (N.D. Miss. 2011); Cullop v. Sphere Drake Ins. Co., 129 F. Supp. 2d 981, 982 (S.D. Miss. 2001) ("The insurer has a duty to defend when there is any basis for potential liability under the policy.").

The initial question here, then, is whether the complaint alleges facts falling outside of the policy's coverage. In the underlying complaint, the plaintiff averred that "[u]pon information and belief, Defendant Elizabeth W. Mosley, owned, operated, and controlled, or in the alternative, was doing business as Mosley's Transportation." Additionally, the complaint alleged Mosley "owned, operated, and controlled, or in the alternative, was doing business as Logisticare of MS." Further, the estate argued that Mosley and/or Logisticare were independent contractors for Medicare or Medicaid and were "in the business of transporting patients to and from their medical treatment facilities." According to the complaint, "on or about March 19, 2010…Pearlie Graham, was being transported by [Mosley], and riding as a guest passenger in a vehicle being driven and operated by the Defendant, Elizabeth W. Mosley, Individually and d/b/a Mosley's

Transportation and/or d/b/a Logisticare of MS, or in the alternative, who was acting in furtherance of and within the course and scope of her employment with Defendant, Logisticare Solutions, LLC."

LogistiCare focuses its entire argument regarding the duty to defend on whether LogistiCare should properly be considered an additional "insured" under the policy. Indeed, the policy defines an "insured" as "any other person or organization vicariously liable for the use of a vehicle by" Mosley. Because the complaint alleges that LogistiCare is vicariously liable for the alleged negligent act, LogistiCare concludes that they must be considered an insured under the "allegations of the complaint" rule. State Farm, however, argues first that the allegations of the complaint remain outside of the policy's coverage due to the "for charge" exclusion. Additionally, State Farm makes a more strained argument that the duty to defend only exists until the "true facts" of the underlying action reveal that no coverage exists.[2]

In the situation at hand, the policy provides that no coverage exists when the insured vehicle is used to "carry persons for a charge." The policy further provides, however, that the "for a charge" exclusion does not apply when the vehicle is used on a "share the expense basis." The complaint averred that Mosley and/or Logisticare were independent contractors for Medicare or Medicaid and were "in the business of transporting patients to and from their medical treatment facilities." Further the complaint alleged that Mosley was doing business as "Mosley's transportation." Based upon the factual averments of the complaint, it is readily

---

[2] Under the "allegations of the complaint" rule the duty to defend is determined by referencing the complaint. Meng, 626 F. Supp. at 1240. There is a narrow exception to this rule, however, where the allegations of the complaint fall outside the coverage of the policy, but the insurer knows of facts indicating coverage. Mavar Shrimp and Oyster Co., v. United States Fid. & Guaranty Co., 187 So. 2d 871, 875 (Miss. 1966). State Farm pulls the holding of Mavar out of context by arguing that it need only defend until the underlying facts prove otherwise. See id.

10

apparent that plaintiff alleged Mosley was using the insured vehicle to transport persons "for a charge."

Although LogistiCare cites to <u>Progressive Gulf Insurance Company v. We Care Day Care Center, Inc.</u>, for support, that case provides no relief.  There, the court ultimately found coverage existed under a policy excluding coverage when the automobile was used to carry persons "for compensation or a fee" despite the fact that the insured was transporting persons in the course of his duties as an employee at the time of the accident.  953 So. 2d at 260.  The insured was employed by We Care Day Care Center, a day care services company for elderly persons.  <u>Id.</u> at 252.  As part of its business operations, We Care provided daily transportation for its participants.  <u>Id.</u> The driver was hired on a minimum wage basis by We Care to transport the participants in a We Care owned vehicle.  <u>Id.</u>  On the date of the subject accident, the driver borrowed the insured's vehicle to make a pick-up due to the fact that We Care's vehicle had been garaged for maintenance.  <u>Id.</u> at 252.  The driver did not receive a mileage reimbursement, the driver was not paid per-trip, and We Care's clients paid nothing for the transportation.  The question was therefore whether the van had been used to carry a person "for compensation or a fee."  <u>Id.</u> at 254.

The court determined that the exclusion could have encompassed situations where money was "paid to the insured in connection with transporting a person" or more narrowly where money was "paid by the passenger on a per-trip basis."  <u>Id.</u> at 259.  The court, unable to determine the exact definition of "for," held that it was ambiguous as to which construction was meant to apply and thus construed the policy in favor of that interpretation granting coverage.  <u>Id.</u> at 260.

In the case at hand, the facts averred clearly allege that Mosley was paid "for" the specific transportation provided. The monetary payments made to Mosley were supposedly "for" the transportation provided to Medicaid patients based on the fact that the complaint alleged she was doing business as Mosley's Transportation Company and was in the business of transporting Medicaid patients. Based on the language of the complaint and policy, the underlying factual averments fell within a policy exclusion. Therefore, based on the "allegations of the complaint" rule and the application of similar "for charge" exclusions under Mississippi law, State Farm owed no initial duty to defend the underlying tort action. As previously stated, however, the duty to defend may subsequently arise if the true facts show that coverage is due despite the allegations contained in the complaint. Nonetheless, as will be subsequently discussed, the actual facts do not support coverage either.

*Duty to Indemnify*

Unlike the initial duty to defend, the duty to indemnify turns on the actual facts as they are borne out. In regard to whether indemnification is due, LogistiCare first argues simply that the facts of the case show that Mosley was not transporting Graham "for a charge." According to LogistiCare, Mosley was a volunteer driver and was not paid a "salary" or provided any "intangible benefits." Accordingly, LogistiCare argues that such an arrangement does not meet a "common-sense approach to 'carry[ing] persons for a charge.'" Alternatively, Logisticare argues that the "carry persons for a charge" is susceptible of more than one meaning and must be construed in favor of coverage.

In support of this argument, LogistiCare cites primarily to <u>Travelers Insurance Company v. State Farm Mutual Automobile Insurance Company</u>. 175 F. Supp. 673, 673 (E.D. La. 1959)

aff'd, 274 F.2d 208, 208 (5th Cir. 1960). In <u>Travelers</u>, the court was faced with an at least colorably similar situation. <u>See id.</u> The exclusionary clause there stated that the policy would not apply when the vehicle was "used for carrying persons for a charge," but also stipulated that "the transportation on a share expense basis in a private passenger automobile of friends, neighbors, fellow employees or school children shall not be deemed carrying persons for a charge." <u>Id.</u> at 675.

In that case, the insured, who was riding as a passenger in his own vehicle, allowed a coworker to drive his vehicle to transport both himself and his co-workers to a job-site. <u>Id.</u> at 674. It was the custom and practice of the employer to pay one member of the crew for the use of his privately owned vehicle to transport the other members of the crew to the site. <u>Id.</u> As such, the insured in that case received from the employer a mileage allowance of fifteen dollars for the first seventy-five miles of the trip and ten cents per mile thereafter in conjunction with providing transportation. <u>Id.</u> The specific question before the court was whether the fact that the insured had been compensated by his employer for carrying his co-employees excluded coverage. <u>Id.</u> at 675.

According to the court, "[o]bviously, the carrying of co-employees in itself would not exclude coverage on the policy…[and], [a]s far as the risk is concerned, there would be no difference whether the mileage was paid by the common employer or prorated among the employees." <u>Id.</u> In light of the stipulation that the exclusion was not to apply for situations involving the carrying of co-employees on a share the expense basis, the court determined that the clause was not intended to apply "where fellow employees of the owner were being carried to work, irrespective of the fact that employer, rather than the employees, was paying the mileage."

Id. at 676.  After making that finding, the court additionally noted that although there were some cases excluding coverage based on similar circumstances, the court noted that in each of those cases the passenger paid a specific amount for the carriage." Id. Additionally, the court further noted that the disagreement among courts as to the interpretation of such clauses leaned against the insurer's burden of showing the exclusion applicable.  Id.

In the case at bar, the clause provides that the policy does not provide coverage when the automobile is used to "carry persons for a charge."  The uncontroverted evidence before the Court reveals that Mosley operated a transportation van at the behest of LogistiCare in order to receive compensation for mileage.  She stated that her goals were not philanthropic, nor did she agree to provide transportation for Graham because she had some previous relationship with her. In return for transporting Graham, Mosley received 48 cents per mile for every mile travelled. Logisticare attempts to argue that "charge" is ambiguous and can be interpreted multiple ways. According to LogistiCare, the policy does not define "charge" and the parties are therefore left to "divine" what this word means.  Further, LogistiCare argues that charge could be interpreted as a charge for the delivery of a person or merely for the use of a vehicle. On the other hand, State Farm argues that a charge is a charge.

This Court agrees with the position of State Farm.  In reviewing a policy, terms should be understood in their "plain, ordinary, and popular sense rather than in a philosophical or scientific sense." Blackledge, 740 So. 2d at 298.  The policy provides that there is no coverage when the vehicle is used to "carry persons for a charge."  Mosley was not carrying Graham in the immediate instance as a gratuity, but in exchange for a definite and compensable rate.

While LogistiCare has attempted to argue that the arrangement between LogistiCare and its drivers was only informal, the agreement signed by Mosley reveals that the parties' expectations regarding payment for miles was more definite than that. The volunteer driver agreement entered into by LogistiCare and Mosley clearly stated, "I expect to be reimbursed solely for my mileage expense associated with using my own vehicle. I understand that I will be reimbursed by LogistiCare, Inc., only for the number of miles driven." From the conception of the parties' relationship, Mosley expected to receive monetary reimbursement for transporting LogistiCare clients. To hold that she was not therefore transporting those patients for a charge would require an extraordinarily strained reading.[3]

Additionally, although merely persuasive, the Court finds additional guidance in a recent Alabama Supreme Court case. In <u>Nationwide Mutual Insurance Company v. Thomas</u>, the Alabama Supreme Court was asked to determine whether a "carry for a fee" exclusion contained in an insurance policy was ambiguous. 103 So. 3d 795, 803 (Ala. 2012). There, the court concluded:

> Although the Nationwide policy does not define the terms used in the carry-for-a-fee exclusion, the terms are not unusual, technical, or otherwise unclear. We conclude that a person of ordinary intelligence would interpret the carry-for-a-fee exclusion to mean that an insurance policy containing such a clause will not provide coverage if the insured used the covered motor vehicle to transport property, such as newspapers, for which the insured receives compensation; therefore, neither the carry-for-a-fee exclusion as a whole nor the individual terms in the exclusion are ambiguous.

---

[3] The Court notes that "charge" has been interpreted by other courts as even including an agreement to do washing for the insured. <u>Rose v. Chapman</u>, 144 P.2d 248, 248 (Wash. 1943); <u>see</u> <u>also</u> 8 Couch on Ins. § 115:126 ("It appears that any form of payment constitutes a 'charge' so as to bring a passenger within the exclusionary clause relating to the carrying of passengers for a charge").

Id.  Similarly, neither are the terms at issue in this case technical or otherwise unclear.  The policy states that coverage is excluded when the subject vehicle is used to "carry persons for a charge" and it is undisputed that Mosley was transporting LogistiCare clients in exchange for a predetermined compensable rate.

The more applicable question to this Court, then, seems to be whether the exception to the exclusion should apply.  That is, whether the fact that the policy provides that the exclusion does not apply when the vehicle is used on a "share the expense basis" changes that conclusion, as was apparently the case in Travelers.  See 175 F. Supp. at 675-76 ("Under the circumstances, *and particularly in view of the limitation on the exclusion*, it would appear that coverage was not excluded while the employees in suit were passengers in the car.") (emphasis added).

In regard to the exception to the exclusion, State Farm argues that the only applicable consideration regarding the provision's application is whether Mosley and Graham shared the expense of the travel to the appointment at issue.  Logisticare, on the other hand, asserts that the share-the-expense exception applies because Mosley was reimbursed for her pro rata expenses based on the amount of miles driven and she did not receive excess over that amount.  In support of that contention Mosley relies heavily on the court's holding in Travelers.  Simply put, however, that reliance is misplaced.

Once again, in Traveler's, the clause stated, "but the transportation on a share expense basis in a private passenger automobile of friends, neighbors, fellow employees or school children shall not be deemed carrying persons for a charge."  175 F. Supp at 675.  It was undisputed that the insured in Traveler's was carrying co-workers.  Thus, the sole question was whether the fact that reimbursement was received from the employer, rather than the individual

co-workers, rendered that exception to the exclusion inapplicable. The Court noted that the risk was the same regardless, and, relying on the exception to the exclusion, held that the clause was clearly not intended to cover situations where the insured was transporting coworkers since that situation was explicitly contemplated as an exception to the exclusion. Id.

As LogistiCare points out, once the insurer shows that an exclusion applies, the burden shifts back to the insured to show there is an applicable exception to that exclusion. See U.S. Fidelity and Guar. Co., 910 F. Supp. at 1182. In the case at hand, the clause simply states that the exception does not apply when the vehicle is used on a "share the expense" basis. Thus, the question is whether the present arrangement, whereby Mosley received a per-mile reimbursement for transporting LogistiCare patients constitutes a share-the-expense arrangement. Although the Court has been able to find no case specifically analyzing an identical clause in the current context, the Seventh Circuit nonetheless considered a similar clause in General Accident Insurance Company of America v. Gonzales. 86 F.3d 673, 673 (7th Cir. 1996). There, the contract provided that the exclusion did not apply to "a share-the-expense car pool." Id. at 674.

The insured in that case routinely transported four of his co-employees to work, which was approximately forty miles away. Id. Each rider paid the insured five dollars daily for the round trip. Id. The riders all considered themselves carpooling, and the insured testified that his weekly gas expenses were at least forty dollars. Id. The court determined that the arrangement indeed constituted carrying persons "for a fee, but held that the application of the exclusion depended upon whether the activity nonetheless fit under the exception to the exclusion for share-the-expense carpools. Id. at 676.

17

In determining what exactly constituted a share the expense carpool, the court placed heavy reliance on the fact that "car pool" was modified by "share the expense." Id. The court noted that the plain meaning of a shared expense carpool is a ride sharing agreement "where the expenses are actually *shared* on a ratable basis." Id. (emphasis added). The court additionally articulated that for the shared expense clause to serve its purpose, "the passengers must not merely contribute but must contribute in proportion to the expenses actually incurred." Id. at 677.

In holding that it was at least ambiguous as to whether the insured's arrangement constituted a share the expense car pool, the Court drew attention to the fact that it was "clear that [the insured's] charge reflected a share of the expenses of the trip and was not designed to cover all of his expenses, much less for profit." Id. at 678. In the at case hand, the situation is vastly different. First, LogistiCare in no way argues that the rate paid was merely intended to cover a *share* of the costs of the trip, but instead admits that it was intended to cover the cost. For instance, in LogistiCare's Rule 30(b)(6) deposition, vice president Charles DeZearn was asked whether the reimbursement was intended to cover the cost of both gasoline and maintenance. DeZearn responded that for the rate, although not specifically itemized and individually charted out by LogistiCare, was expected to "cover what you are doing for [LogistiCare] for that time that you are driving that Medicaid member to their medical appointment." Mosley's perception of the situation affirms that general arrangement as well.

According to Mosley, she would not have continued to drive month after month had it been purely a losing proposition. If the reimbursement was not sufficient to cover the cost of the trip, Mosley asserted that many of the drivers would reject a proposed route. When asked

whether the rate was sufficient to cover the trips, Mosley stated, "Depends on if you had a breakdown, that had to come out of there. You just hoped your vehicle didn't break down. Because you had to pay for the gas, the upkeep of your vehicle and everything. Then if you had anything leftover over you did, but the upkeep had to [be maintained] on your vehicle." Additionally, Mosley stated that at one point she requested more trips with additional clients to ensure that there was greater surplus. According to Mosley, "[t]hey started giving me two or three people so I will work…Because I told them there wasn't no benefit, you know. I was paying for gas and then using money for gas. So they tried to give me at least two or three so I will come out."

Under a plain reading of the policy, in order to meet a share-the-expense basis exception, it is necessary that the expenses be shared. The expectation here was that the disbursement would cover the expense of the trip. Unlike in <u>Gonzales</u>, where the arrangement according to the court was clearly not designed to create a profit, the evidence surrounding the present arrangement strongly suggests that it was indeed designed to at least allow Mosley to break even. There was no intent to share the expense of the trips here; Mosley had no interest in the venture other than obtaining her reimbursement. According to DeZearn, when a driver is on a route, "[y]ou are doing this trip, you are taking this member here, you are not to pick your mama up at the airport or any of those things." The trips were not made on a share the expense basis; the specific purpose of the trip at issue was to shuttle Graham to an appointment only, and the mileage reimbursement was to cover the cost of that trip.[4]

---

[4] Defendants place significant reliance on Mosley's testimony that the IRS filings for Mosley's Transportation did not reflect any profits. The Court fails to see how this is determinative of whether the trips were conducted on a "share the expense basis."

The policy at issue plainly and unambiguously excludes coverage when the insured vehicle is used to transport persons "for a charge." Mosley was clearly transporting persons for a charge. Although the exclusion does not apply when an insured is carrying persons on a share the expense basis, the evidence shows that Mosley was not "sharing the expense" of her routes. The Court determines that there is no coverage for carrying persons for a charge and the undisputed facts in the case at hand show there is no coverage. Under the language of the policy, summary judgment is therefore due in favor of State Farm as to State Farm's duty to provide indemnification.

*Collateral Estoppel*

Defendant Logisticare argues in its motion for summary judgment that the doctrine of collateral estoppel precludes State Farm from bringing the present action. Similarly, Defendant Graham also echoes this theory in his response to State Farm's motion for summary judgment. Under Fifth Circuit precedent, the first requirement for the invocation of collateral estoppel is that "the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action." United States v. Shanbaum, 10 F.3d 305, 311 (5th Cir. 1994). Defendants, however, cannot meet even the first element and collateral estoppel is inappropriate.

In support of their argument, Defendants point out that State Farm and LogistiCare have already litigated a case considering the "for charge" exclusion before the Superior Court of Fulton County for the state of Georgia. The issue in that case, however, was whether the exclusionary clause was clear and unambiguous under Georgia law. This case, quite separately, turns on whether the clause is clear and unambiguous under Mississippi law. The issues are not identical, and collateral estoppel does not apply.

*Equal Protection and Due Process*

Defendant Graham argues that because Mosley "works for a Transportation Company…[State Farm] discriminates against her, by punishing and refusing her coverage without any evidence she violated part of the policy."  According to Graham, "[s]imply denying coverage because [Mosley] transport [sic] persons to medical appointments by itself, without any other evidence violates due process."  Additionally, Graham argues that the declaratory judgment action is premature and thus violated due process because no judgment has been rendered in the pending state court case.  Of these theories, only the last merits consideration.  Nonetheless, although generally the duty to indemnify should be determined only after imposition of a judgment, where the court finds there is no duty to defend the court may also hold that there is no duty to indemnify.  American States Ins. Co. v. Bailey, 133 F.3d 363, 369 (5th Cir. 1998) ("Given that the district court was going to decide the issue of the duty to defend…it was not an abuse of discretion for the district court also to decide the issue of the duty to indemnify."); see also Western Heritage Ins. Co., 998 F.2d at 315.

*Requested Relief*

Finally, LogistiCare additionally draws the Court's attention to the specific relief requested by State Farm.  As LogistiCare points out, State Farm's motion for summary judgment requests that the Court "declare that State Farm has no obligation to indemnify and/or defend Elizabeth Mosley for the claims arising out of the motor vehicle accident of March 19, 2010."  According to LogistiCare, "[b]y only asking for summary judgment as to Mosley, State Farm is not asking this Court to hold that State Farm does not owe a duty to defend or indemnify

LogistiCare, for which it bears the burden to show with respect to its exclusion." The Court, however, fails to see how this provides LogistiCare any benefit.

Based on State Farm's motion for summary judgment, this Court has determined that the "for a charge" exclusion precludes State Farm's duty to either defend or indemnify Defendant Mosley. Further, in considering LogistiCare's motion for summary judgment, this Court has determined that the contract does not entitle LogistiCare to coverage as an additional insured based on the "for a charge" exclusion. Contrary to LogistiCare's proposed construction of the policy, the Court has found that the exclusionary clause at issue is unambiguous and clearly applies to the underlying conduct.

CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [69] is GRANTED, and the Court determines that State Farm owes no duty to defend or indemnify Defendant Mosley. Defendant Albert Graham's Motion for Summary Judgment [38] is DENIED. And Finally, Defendant LogistiCare's Motion for Summary Judgment [66] is DENIED.


SO ORDERED on this, the 26th day of March, 2013.


**/s/   Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**